UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-against-

MILETA MILJANIC,

Defendant.

**OPINION AND ORDER**

22-CR-00318 (PMH)

PHILIP M. HALPERN, United States District Judge:

By letter-motion dated July 28, 2026, Defendant Mileta Miljanic ("Miljanic") seeks early termination of his supervised release. (Doc. 51, the "Motion"). On August 11, 2026, the Government filed a letter opposing the Motion but stating that the Government would not oppose modifying Mr. Miljanic's conditions of supervised release to permit travel without Court intervention, subject to approval of the Probation Office. (Doc. 53, "Gov't Opp.").[1]

For the reasons set forth below, the Motion is DENIED. The Court will, however, modify Defendant's conditions of supervised release to permit him to travel without Court intervention, subject to approval of the Probation Office.

## BACKGROUND[2]

Mr. Miljanic was believed to be a high-ranking Serbian organized crime member with close ties to the Gambino Crime Family. (PSR ¶ 11). Mr. Miljanic controlled a company called MDP Rebar that operated in the rebar business. (*Id.* ¶ 12). From the second quarter of 2018 to the second quarter of 2021, MDP Rebar employed only Mr. Miljanic, members of his family and an individual who was believed to be the Consigliere of the Gambino Crime Family. (*Id.*).

[1] Citations to the parties' filings correspond to the pagination generated by ECF.

[2] The Court draws the background facts principally from the record of the underlying criminal proceeding, including the Presentence Investigation Report dated July 24, 2023, prepared by Probation Officer Deanna M. Paige, in connection with Mr. Miljanic's sentencing ("PSR"), and the parties' submissions.

Mr. Miljanic, in March 2020, caused to be submitted to the Small Business Administration ("SBA") a fraudulent application for an Economic Injury Disaster Loan ("EIDL"). (*Id.* ¶ 17). As a result of submitting the fraudulent EIDL Application, Mr. Miljanic received an EIDL loan from the SBA totaling $155,000. (*Id.* ¶ 18). In 2018 and 2019, Mr. Miljanic also used fraudulent expense numbers and underreported his actual income by at least hundreds of thousands of dollars. (*Id.* ¶ 19). The IRS has calculated the resulting tax loss for 2018 as $304,421 and for 2019 as $317,279, totaling $621,700. (*Id.*).

On May 3, 2023, Mr. Miljanic pled guilty to a four-count Superseding Information for Wire Fraud, Making False Statements to the SBA and two counts of Tax Evasion. (*Id.* ¶¶ 2-5). On August 24, 2023, Mr. Miljanic was sentenced to a term of 33 months of imprisonment, to be followed by 3 years of supervised release. (Doc. 44, "Judgment"). Mr. Miljanic was also ordered to pay restitution in the amount of $621,700. (Doc. 42, "Consent Order of Restitution"). On June 6, 2024, Mr. Miljanic commenced his term of supervision. (Motion at 2).[3]

## STANDARD OF REVIEW

The Court may "terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release . . . if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1). When assessing a motion for early termination of supervised release, the Court must also consider certain § 3553(a) factors. *See United States v. Lussier*, 104 F.3d 32, 34

[3] Following the execution of a search warrant for Mr. Miljanic's residence, he was also charged with being a felon in possession of a firearm for which he was sentenced in the Eastern District of New York to 16 months' imprisonment, to be followed by two years of supervised release. (Motion at 6). Mr. Miljanic has completed his sentence and two years of supervised release in the Eastern District of New York. (*Id.*).

(2d Cir. 1997).[4] These factors include "general punishment issues such as deterrence, public safety, rehabilitation, proportionality, and consistency." *Id.* at 35.[5]

A district court is not required "to make specific findings of fact with respect to each of the Section 3553(a) factors." *United States v. Torres*, No. 21-2511-cr, 2022 WL 17087048, at *3 (2d Cir. 2022). "[A] statement that the district court has considered the statutory factors is sufficient." (*Id.*). The Court must also make an "individualized assessment of the need for ongoing supervision" under the November 2025 Sentencing Guidelines. *See* U.S.S.G. § 5D1.4(b). The Sentencing Commission, in the November 2025 Sentencing Guidelines amendments, also issued a policy statement outlining a non-exhaustive list of factors that courts may wish to consider when determining whether to terminate supervised release. *See* U.S.S.G. § 5D1.4(b), comment n.1(B).[6]

---

[4] Unless otherwise noted, all case quotations omit internal quotation marks, citations, alterations, and footnotes.

[5] 18 U.S.C. § 3583(e) provides that a district court may terminate a term of supervised release "after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)."

[6] These factors are:

> (i) any history of court-reported violations over the term of supervision; (ii) the ability of the defendant to lawfully self-manage (e.g., the ability to problem-solve and avoid situations that may result in a violation of a condition of supervised release or new criminal charges); (iii) the defendant's substantial compliance with all conditions of supervision; (iv) the defendant's engagement in appropriate prosocial activities and the existence or lack of prosocial support to remain lawful beyond the period of supervision; (v) a demonstrated reduction in risk level or maintenance of the lowest category of risk over the period of supervision; (vi) and whether termination will jeopardize public safety, as evidenced by the nature of the defendant's offense, the defendant's criminal history, the defendant's record while incarcerated, the defendant's efforts to reintegrate into the community and avoid recidivism, any statements or information provided by the victims of the offense, and other factors the court finds relevant.

U.S.S.G. § 5D1.4(b), comment n.1(B).

"The burden of proof for establishing entitlement to early termination of supervised release lies with the defendant." *United States v. Weiss*, No. 21-CR-00457, 2022 WL 3214914, at *2 (S.D.N.Y. Aug. 9, 2022). "Early termination is not warranted as a matter of course, and decisions regarding termination of supervised release are within the discretion of the district court." *United States v. Fernandez*, No. 10-CR-00905, 2025 WL 3687434, at *1 (S.D.N.Y. Dec. 19, 2025). "Supervised release is not, fundamentally, part of the punishment; rather, its focus is rehabilitation." *United States v. Aldeen*, 792 F.3d 247, 252 (2d Cir. 2015); *see also United States v. Johnson*, 529 U.S. 53, 59 (2000) ("Supervised release fulfills rehabilitative ends, distinct from those served by incarceration.").

The Second Circuit, in *Lussier*, observed that "[o]ccasionally, changed circumstances — for instance, exceptionally good behavior by the defendant or a downward turn in the defendant's ability to pay a fine or restitution imposed as conditions of release" may justify modification of the terms of supervised release. 104 F.3d at 36. The Second Circuit has also clarified that "[s]o long as the court, when modifying supervised release conditions, considers the relevant 18 U.S.C. § 3553(a) sentencing factors, there is no additional requirement that it make a finding of new or changed circumstances with respect to the defendant." *United States v. Parisi*, 821 F.3d 343, 347 (2d Cir. 2016). Accordingly, "the plain language of *Lussier* . . . does not require new or changed circumstances relating to the defendant in order to modify conditions of release, but simply recognizes that changed circumstances may in some instances justify a modification." *Id.*

## <u>ANALYSIS</u>

Mr. Miljanic states that he seeks early termination of supervised release "so that he may freely travel to Serbia to assist his family" with running the family business. (Motion at 3). Mr. Miljanic argues that his circumstances have changed due to the untimely passing of his son, leaving

behind a widow and four children under the age of 9. (Motion at 5). Mr. Miljanic seeks to travel to Serbia for weeks at a time to assist his daughter-in-law and wife with running the family's gas station, supermarket and café business. (Motion at 3, 5). Mr. Miljanic asserts that, in addition to changed circumstances, he meets the criteria for the presumption of early termination of supervised release, he has been successfully rehabilitated, he has demonstrated the ability to be a productive member of society through his steady employment with MGJ Contracting Corp., and the public does not need to be protected from any future crimes. (Motion at 5-6).

The Government and Probation oppose the early termination of supervised release. The Government states that Mr. Miljanic is currently being supervised by a probation officer in the Eastern District of New York and that he has been compliant with the terms of supervised release. (Gov't Opp. at 2). The Probation Office "acknowledge[s] the defendant's positive adjustment while under supervision such as continued abstinence from drug use, stable employment, and lack of law enforcement contact, [and] in recognition of this progress, EDNY exercised discretion by allowing him to be supervised by a Probation Officer Assistant where there is minimal contact." (Gov't Opp. at 2). The Probation Office opposes early termination of supervised release due to the seriousness of the underlying offense, the defendant's criminal history, his reported ties to organized crime and the fact that the reporting requirements do not constitute a significant burden. (Gov't Opp. at 2). The Government opposes early termination of supervised release because of the serious nature of the offenses, Mr. Miljanic has not demonstrated exceptional or changed circumstances such that supervised release is no longer appropriate to serve the general punishment goals of section 3553(a), and compliance with the terms of supervised release is expected of all defendants and does not warrant early termination. (Gov't Opp. at 3).

All parties acknowledge that Mr. Miljanic has thus far complied with the terms of supervised release. Nonetheless, courts in this Circuit have consistently declined to grant motions for termination of supervised release where defendants have "done nothing more than what is expected of all criminal defendants." *United States v. Liriano*, No. 91-CR-00908, 2010 WL 532517, at *1 (S.D.N.Y. Feb. 11, 2010); *see also United States v. Tirado*, No.15-CR-00487-5, 2026 WL 1088721, at *3-4 (S.D.N.Y. Apr. 22, 2026) ("Compliance with the terms of supervised release is to be expected and is not a basis alone to terminate supervised release" absent "extraordinarily good behavior or unforeseen circumstances"); *United States v. Berrios*, No. 95-CR-00084, 2010 WL 1010022, at *2 (S.D.N.Y. Mar. 16, 2010) (denying early termination of supervised release because defendant's good conduct was not "exceptional" or "new or unforeseen"); *United States v. Kassim*, No. 15-CR-00554, 2020 WL 2614760, at *2 (S.D.N.Y. May 22, 2020) ("[F]ull compliance with the terms of supervised release, without more, generally does not warrant early termination . . . [because] if every defendant who complied with the terms of a supervised release were entitled to early termination, the exception would swallow the rule.").

Defendant contends, however, that he has done more than simply comply with the terms of supervised release. Defendant maintains that he meets the criteria set forth in the Guide to Judiciary Policy that creates a presumption in favor of early termination of supervised release. *See* Guide to Judiciary Policy, Vol. 8, Ch. 3, Section 360.20(e), available at https://www.uscourts.gov/administration-policies/judiciary-policies/post-conviction-supervision-policies. The Guide to Judiciary Policy places a presumption in favor of granting a motion for early termination of supervised release brought by an individual who has completed at least eighteen months of supervised release and (1) is not a career criminal and has not committed a sex offense or an act of terrorism; (2) does not present a risk of harm to the public or to any victims;

(3) is without court-reported violations for at least one year; (4) has demonstrated he or she can act in accordance with the law beyond the term of supervision, including by engaging in prosocial activities and receiving prosocial support; and (5) is in substantial compliance with all conditions of supervision. *Id.*

"Defendant offers no authority indicating that this guide applies to judges or otherwise creates a presumption guiding a judge's discretion in applying 18 U.S.C. § 3583(e)." *United States v. Daghlawi*, No. 18-CR-2144, 2026 WL 2170087, at *4 (S.D. Cal. July 27, 2026). In addition, Section 120 of Volume 8E further delineates the scope of the *Guide* by stating "[t]he guidance in this part applies to employees of the U.S. probation and pretrial services system in U.S. district courts in performance of their duties." Accordingly, Defendant has not established that there is a presumption favoring early termination of supervised release that is binding on the Court.

Finally, Mr. Miljanic contends that early termination of supervised release is warranted due to the changed circumstances of the untimely passing of his son which necessitates Mr. Miljanic to travel to Serbia to assist his daughter-in-law and wife. (Motion at 5 & Ex. B). Mr. Miljanic intends to maintain his primary residence and employment in New York and travel to Serbia to provide assistance in running the family business and taking care of his grandchildren. (Motion at 3). The Court is certainly sympathetic to Mr. Miljanic's family situation and the untimely passing of his son. The Court has permitted Mr. Miljanic to travel to Serbia on two occasions, without objection from the Probation Office, to attend to family obligations. (*See* Docs. 48 & 50). The Court also commends Mr. Miljanic's compliance with all supervision terms, good behavior and consistent employment as laudable accomplishments. They were similarly fully expected of him and therefore do not warrant early termination of supervised release. The serious

nature of the offense, the need to continue to protect the public, Mr. Miljanic's criminal history and his outstanding restitution obligation[7] weigh against early termination of supervised release.

The arguments advanced by Mr. Miljanic, however, warrant modifying the conditions of supervision to permit him to travel without court intervention, subject to approval of the Probation Office. The Government and Probation Office do not object to this modification of the terms of supervised release. (Gov't Opp. at 3-4). Mr. Miljanic is also free to seek Court intervention should the need arise. Because the Court is modifying the terms of Mr. Miljanic's supervised release in his favor, the Court is not required to hold a hearing. *See* Fed. R. Crim. P. 32.1(c)(2)(B) ("A hearing is not required if . . . the relief sought is favorable to the person and does not extend the term of probation or of supervised release").

## CONCLUSION

For the foregoing reasons, Defendant's motion for early termination of supervised release is DENIED. Defendant's conditions of supervised release are modified to permit him to travel without court intervention, subject to approval of the Probation Office. The Clerk of the Court is respectfully directed to terminate the motion sequence pending at Doc. 51.

**SO ORDERED:**

Dated: White Plains, New York
August 21, 2026

Philip M. Halpern
United States District Judge

[7] Defendant acknowledges that an outstanding restitution obligation may weigh against early termination. (Motion at 6; *see also United States v. Badoolah*, No. 12-CR-00774, 2026 WL 1045607, at *4 (E.D.N.Y. Apr. 17, 2026) ("[the defendant's] significant outstanding restitution obligation of over $400,000 heavily weighs against early termination").